UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 24-105** |
| v. | * | **SECTION: "D"(1)** |
| **JOVANNA R. GARDNER** | * | |

\* \* \*

## FACTUAL BASIS

The defendant, **JOVANNA R. GARDNER**, has agreed to plead guilty. Should this matter proceed to trial, the United States would prove beyond a reasonable doubt, through credible testimony and reliable evidence, the following facts. Unless stated otherwise, the following acts occurred within the jurisdiction of the Eastern District of Louisiana.

**GARDNER** was in a romantic relationship with Ryan J. Harris ("Harris") that began sometime around 2017. Harris owned an automobile repair shop and purchased automobiles at auction. Harris intentionally staged collisions between automobiles so he and others could file fraudulent insurance claims based on the collisions. Harris recruited **GARDNER** to assist in his staged accident scheme. **GARDNER** was involved in several of Harris's fraudulent insurance claims that were based on the staged collisions. Harris also intentionally staged collisions between automobiles and commercial vehicles, including 18-wheeler tractor trailers. Harris recruited others, including friends and family members, to participate in staged collisions for the purpose of filing fraudulent insurance claims and fraudulent lawsuits.

Attorney A was an attorney in the New Orleans area. Co-Conspirator B worked closely with Attorney A. Co-Conspirator B had previously been an attorney but had been disbarred. Individuals who visited Attorney A's office and interacted with Co-Conspirator B believed that Co-Conspirator B was an attorney. Harris was close with Attorney A and Co-Conspirator B, and


he directed individuals involved in staged collisions to Attorney A's office for representation in lawsuits that Harris, Attorney A, and Co-Conspirator B knew were fraudulent. Attorney A and Co-Conspirator B paid Harris for staging collisions and directing individuals involved in staged collisions to Attorney A's office.

Cornelius Garrison staged collisions and directed individuals involved in staged collisions to Attorney A's office in exchange for payment from Attorney A and Co-Conspirator B. In September 2020, a federal grand jury in the Eastern District of Louisiana charged Garrison with various counts of fraud related to the staged collisions. Around that time, Harris told **GARDNER** that Garrison was cooperating with a federal criminal investigation into the staged collisions. Harris told **GARDNER** that "the lawyers" wanted Harris to pay Garrison so Garrison would not cooperate with the federal criminal investigation. Harris told **GARDNER** that "the lawyers" had given him Garrison's home address and that he needed **GARDNER** to text message Garrison using the cell phone Harris gave her. **GARDNER** understood that "the lawyers" were Attorney A and Co-Conspirator B. Harris instructed **GARDNER** to use a false name when text messaging Garrison. Harris also told **GARDNER** that he would be going to visit Garrison to offer Garrison money in order to persuade Garrison to stop his cooperation with federal agents regarding fraudulently staged collisions. Harris told **GARDNER** that it was necessary to use the false name because Harris and the lawyers were worried that Garrison may not agree to meet otherwise. **GARDNER** believed she was setting up a meeting between Harris and Garrison for this purpose. Harris did not tell **GARDNER** that he would commit violent acts against Garrison.

**GARDNER** followed Harris's instructions and text messaged Garrison using the cell phone Harris gave her and a false name. **GARDNER** believed she was assisting Harris in



convincing Garrison to not cooperate with the federal criminal investigation. Later that evening, Garrison was murdered at his mother's home. Following the murder, Harris visited **GARDNER** and admitted that he had killed Garrison. Harris threatened **GARDNER** that, if she told anyone about the murder, he would kill her. Over the next several years, Harris made similar threats to **GARDNER** that he would kill or harm her if she told anyone about Garrison's murder.



Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **GARDNER**, and it is not a complete statement of all facts described by **GARDNER** to the government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for her guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for **GARDNER'S** plea of guilty to the charged offense.

_____  6/18/2024
Matthew R. Payne                    Date
Brian M. Klebba
Assistant United States Attorneys
J. Ryan McLaren
Trial Attorney


_____  6/18/24
Graham Bosworth                     Date
Counsel for Jovanna R. Gardner


_____  6/18/24
Jovanna R. Gardner                  Date
Defendant